KUHN, J.
| gDefendant-appellant, Hebert Brothers Engineers, Inc. (Hebert Brothers)[1] appeals the trial court’s judgment awarding to plaintiffs-appellees, Rosa Lee Watts and her children (the Watts),[2] the survival action damages of the decedent, Alfred Watts,[3] after his death from lung cancer contracted as a result of his employment with Hebert Brothers on the Dow Chemical Company (Dow) premises located in Plaquemine, Louisiana. We amend the judgment to reflect Hebert Brothers’ virile portion and, as amended, affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Alfred began working as a laborer for Hebert Brothers in 1963 in the cell service unit of the chlorine plant at the Dow premises. In conjunction with the manufacturing process in the chemical plant, Alfred and his coworkers were required to handle asbestos. In 1994, after his voice box was removed as a result of laryngeal cancer, Alfred retired from Hebert Brothers. In the summer of 2001, Alfred was diagnosed with lung cancer from which he died on October 31, 2001.
Although this lawsuit, filed on September 10, 2001, named as defendants numerous entities, including those who had manufactured or distributed asbestos as well as Dow in its capacity as premises owners, Hebert Brothers was not made a Rparty to the lawsuit until the Watts filed a supplemental petition on August 29, 2003. Subsequently, the Watts dismissed all the other named defendants from the lawsuit including Dow, which was dismissed by an order signed on September 3, 2003. Thereafter, the matter proceeded to trial against Hebert Brothers.
A seven-day jury trial was held. After the presentation of evidence, the Watts moved for a directed verdict arguing, among other things, that there was no evidence of the fault of any entity other than Hebert Brothers. The trial court denied relief. Hebert Brothers then *58 moved for a directed verdict, urging that because the Watts had not put on any evidence of the fault of anyone other than ostensibly that of Hebert Brothers, the Watts’ claims were prescribed. Emphasizing that the jury was impaneled and almost ready to deliberate, the trial court denied Hebert Brothers’ motion for a directed verdict, expressly noting that its ruling was not based on the merits of the request. Although the trial court granted leave for Hebert Brothers to seek supervisory writs, the jury was charged and retired.
After deliberations, the jury rendered a verdict finding that Hebert Brothers was negligent and that its negligence was a substantial factor in causing both Alfred’s laryngeal and lung cancers. The jury also found that Alfred, despite having been a heavy cigarette smoker who regularly consumed alcohol until the removal of his voice box in 1994, was not contributorily negligent in causing either of his cancers. Damages totaling $3,625,000.00 were awarded to the Watts for Alfred’s survival action.
Prior to entry of a final judgment, the trial court granted Hebert Brother’s motion to stay the proceedings while the issue of prescription was under supervisory review. This court subsequently issued a ruling, stating:
WRIT GRANTED IN PART; DENIED IN PART; REMANDED WITH INSTRUCTIONS. The documents presented to this Court indicate that, while the [trial] court denied [Hebert Brothers’] motion |4for directed verdict on the basis of prescription (which issue was initially raised in [Hebert Brothers’] answer), it did not consider the merits of that motion. Neither does it appear that the issue of prescription was presented to the jury for its consideration. Under the particular circumstances presented here, the application is hereby granted insofar as the case is remanded to the [trial] court with instructions to consider and rule on the merits of [Hebert Brothers’] assertion that [the Watts’] claims against it have prescribed and then to render a final judgment. Thereafter, the party or parties ultimately aggrieved by the judgment can seek a timely appeal with this Court. In all other respects, the application is hereby denied.
Watts v. Georgia-Pacific Corp., 2005-0933 (La.App. 1st Cir.6/17/05) (unpublished writ action).
A hearing was held on the remand, after which the trial court concluded that the Watts’ claims against Hebert Brothers were not prescribed. A final judgment, incorporating the jury’s verdict, was signed on June 2, 2011, and Hebert Brothers timely appealed.
On appeal, Hebert Brothers asserts the trial court erred by: (1) concluding that the Watts’ claims were not prescribed; (2) failing to render a judgment that limited Hebert Brothers’ liability to its virile share; and (3) awarding an excessive amount of damages for Alfred’s survival action in connection with his lung cancer.
PRESCRIPTION[4]
It is undisputed that when Hebert Brothers was made a defendant in the *59 Watts’ lawsuit, over a year had elapsed from the date of Alfred’s death. Thus, on the face of the pleadings, the Watts’ claims were prescribed. But when prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors. See La. C.C. art. 3508; see also]¿La. C.C. art. 1799 (the interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs); Hoefly v. Government Employees Ins. Co., 418 So.2d 575, 577-78 (La.1982) (plaintiffs timely and properly filed suit against tort-feasors interrupted prescription as to his uninsured motorist carrier, who was solidarity liable to him). Hebert Brothers urges that the record is devoid of any evidence that establishes a solidary relationship between it and another timely sued defendant.
An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee. La. C.C. art. 1794. For purposes of prescription, parties are solidarity liable to the extent that they share coextensive liability to repair certain elements of the same damage. Glasgow v. PAR Minerals Corp., 2010-2011 (La.5/10/11), 70 So.3d 765, 772.
Without levying any claims challenging the jury’s conclusions that Hebert Brothers was a substantial factor in causing Alfred’s laryngeal and lung cancers or that Alfred was not contributorily negligent in causing his cancers, in this appeal, Hebert Brothers asserts that the record fails to establish Dow’s liability so as to create the necessary solidary relationship to support the trial court’s conclusion that the Watts’ claims were timely asserted. Thus, in order to prove the solidary relationship between Hebert Brothers and Dow, the Watts had to prove Dow’s liability.
Dow’s Liability:
It is undisputed in this case that it was the Dow premises upon which all manufacturing operations occurred and included Alfred’s handling of asbestos. With regard to a long-latency occupational disease claim, the law in effect at the time of the exposure applies. See Cole v. Celotex Corp., 599 So.2d 1058, 1066 (La.1992). Thus, in our examination of the record to ascertain whether Dow was 16liable under a theory of strict liability, see La. C.C. art. 2317, the limitations imposed on strict premises liability set forth in La. C.C. art. 2317.1, added by Louisiana Acts 1996, 1st Ex.Sess., No. 1, § 1, are not applicable.
In a typical negligence case against the owner of a thing (such as a manufacturing facility that utilizes asbestos in its process) that is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury, which resulted in the damage; that the owner knew or should have known of that risk; and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing pre *60 sented an unreasonable risk of harm. See Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982).
In a strict liability case against the same owner, the claimant is relieved only of proving the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm, which resulted in the damage (i.e., must prove the thing was defective). The resulting liability is strict in the sense that the owner’s duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which usually gives rise to a duty under negligence concepts. Under strict liability concepts, the mere fact of the oumer’s relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody. If the owner breaches that absolute duty to discover, he is presumed to have discovered any risks presented by the thing in custody, and the owner |7accordingly will be held liable for failing to take steps to prevent injury resulting because the thing in his custody presented an unreasonable risk of injury to another. Kent, 418 So.2d at 497.
Accordingly, in a strict liability case in which the claimant asserts that the owner’s damage-causing thing presented an unreasonable risk of harm, the standard for determining liability is to presume the owner’s knowledge of the risk presented by the thing under his control and then to determine the reasonableness (according to traditional notions of blameworthiness) of the owner’s conduct, in the light of that presumed knowledge. Id.
The evidence introduced at trial established that Dow was the owner of the asbestos that Hebert Brothers’ employees utilized in their day-to-day operations in the cell service unit of the chlorine plant on Dow’s premises. Charles Snearl, who worked for Hebert Brothers at the Dow facility from 1972 through 1988, primarily as a foreman, testified that the orders on what day-to-day tasks were undertaken came from Dow, the workers used Dow equipment, and Dow provided the asbestos, which was utilized in the cell service unit. Sirkil Pania worked for Hebert Brothers at Dow from 1957 through 1996. He was assigned to Dow’s cell service unit from 1957 through 1972, and worked as a laborer with Alfred from 1963 through 1972. Pania testified that he and Alfred did the same type of tasks on a daily basis. In conformity with Snearl, Pania testified that all the asbestos utilized by Alfred and him was provided by Dow. Omer King Hebert, the present owner and president of Hebert Brothers, stated that no one could get on Dow’s premises without Dow’s permission, Hebert Brothers’ workers did whatever Dow told them to do, and Dow was in charge of everything at the facility. Hebert testified, “[W]e relied on ... Dow ... I mean, it was their [facility. They knew what dangers they had and didn’t have and ... we always just ... went by their [guidelines and directions.”
| sThere is really no dispute in this case that asbestos is a substance that creates an unreasonable risk of harm when inhaled. The testimony of nearly every witness who worked on Dow’s premises; Dr. Antonio Edwards, Alfred’s treating physician who diagnosed the lung cancer; and Dr. Alfredo Suarez, the pathologist who performed the autopsy on Alfred; along with the testimony of Dr. Richard Lemen, an expert in epidemiology and industrial hygiene; Dr. Arnold Brody, Dr. Jerrold Abraham, and Dr. Travis Harrison, experts in pathology; and Dr. Robert Jones, an expert in pulmonary disease, estab *61 lished that asbestos was a substance that created an unreasonable risk of harm. While the views of the expert witnesses reflected differing opinions on whether Alfred’s lung cancer was a result of a significant exposure to asbestos, his longtime heavy cigarette smoking, or the synergistic effect of the two factors, none disagreed with the dangerous propensities of asbestos when inhaled, and on appeal, Hebert Brothers does not suggest that asbestos inhalation in significant quantities is anything other than an unreasonable risk of harm.
Thus we turn our attention to the reasonableness of Dow’s conduct, in the light of its presumed knowledge of the risk presented by the asbestos which was under its control. Hebert Brothers presented evidence of the safety measures Dow undertook to protect both its own workers and those employed by Hebert Brothers from the dangers presented by the inhalation of significant quantities of asbestos. Both Snearl and Hebert testified about the extensive protocols in place at the Dow facility certainly no later than the 1980s. But Snearl — who testified that workers had safety equipment (including some sort of respirator) on them the entire time they worked in the asbestos vat — did not commence his employment at the Dow facility until 1972. And Hebert conceded that during his early part-time employment as an assistant timekeeper in 1972, he was not usually in the cell |aservice unit of the chlorine plant, just on occasions, and that he would use whatever safety precautions he observed workers in the unit undertaking.
Pania, however, described in detail the significant asbestos exposure that he and Alfred experienced as laborers working for Hebert Brothers at the Dow facility between 1963 and 1972 on a daily basis when no protective gear was provided. According to Pania, in putting cells together in the chlorine plant, a crew would go into a railroad box car and load sacks of raw asbestos off the car and onto a pallet. One worker would bring the pallet out with a forklift and another would begin stacking the individual sacks. Occasionally, a sack would bust open in the railroad car or when it was in transit. Once opened, the vicinity became dusty. Each sack of asbestos weighed approximately 100 pounds. When asbestos was needed in the cell-building process, a laborer (including Pa-nia and Alfred) would get a couple sacks, cut each open with a knife, and dump the raw asbestos into a vat for mixing. A ceiling fan would stir up the asbestos dust that was created upon dumping. Additionally, part of the cell-making process included use of an asbestos rope that created dust when pounded into place. The laborers were also exposed to asbestos dust in the cell breakdown process, which required use of a hatchet to physically remove baked-on asbestos, a process that also created dust; as well as in the cleanup process of the asbestos debris, which included sweeping the displaced asbestos particles into piles.
Pania acknowledged that beginning in 1974, Dow began conducting annual physical exams, had a physician on the premises, and performed chest x-rays. But he stated that between 1963 and 1972, no one ever told him of the dangers of asbestos exposure, there were no posted warning signs, he was not advised either to wear a respirator to protect himself from asbestos fibers or of the heighten danger created by asbestos inhalation and cigarette smoking.
| inGiven Pania’s undisputed testimony about the lack of any safety precautions in the Dow facility between 1963 and 1971, we find a reasonable factual basis exists to support the trial court’s implicit finding that Dow is liable based on a theory of *62 strict custodial liability under La. C.C. art. 2317 (before Louisiana Acts 1996, 1st Ex. Sess., No. 1, § 1). Specifically, Pania’s testimony established that as a laborer, between 1963 and 1972, Alfred inhaled significant quantities of asbestos; Dow owned the asbestos, which was unreasonably dangerous, and the inhalation occurred on Dow’s premises; and Dow failed to take reasonable steps to prevent his injury. As such, there is no manifest error.[5] See Stobart v. State, Dep’t of Transp. and Dev., 617 So.2d 880, 882-83 (La.1993).[6]
Hebert Brothers complains about the Watts having moved for a directed verdict averring, after the close of evidence, that there was no evidence of fault of any entity other than Hebert Brothers and then took the exact opposite position after Hebert Brothers moved for a directed verdict on the issue of the timeliness of their claims against it. While we do see the irony of the changed positions the Watts argued before the trial court, arguments of counsel are not evidence. Importantly, the trial court denied the Watts’ motion for a directed verdict on that | nbasis, implicitly finding that evidence of other entities’ fault existed. Moreover, we point out by analogy that alternative assertions are frequently advanced in the legal context. Indeed, our system of pleading permits parties to assert alternative theories of liability. See La. C.C.P. art. 892 (a petition may set forth two or more causes of action in the alternative, even though the legal or factual bases thereof may be inconsistent or mutually exclusive). There is no prejudice shown by Hebert Brothers and the legal effect of the Watts’ inconsistent arguments are of no moment in our appellate review.
Accordingly, there is no error in the trial court’s determination that Dow’s liability was proven by the evidence admitted a trial. Thus, a solidary relationship existed between Hebert Brothers and Dow, a timely sued defendant, and the trial court correctly concluded that the Watts’ claims were timely.[7]
*63 VIRILE SHARE
The trial court incorporated the jury’s verdict awarding damages to the Watts without reducing the percentage of fault attributable to Dow that it found, after the jury’s verdict on remand from this court, was a proven co-obligor of Hebert Brothers. Because the record establishes, without dispute, that Alfred inhaled significant quantities of asbestos between 1968 and 1971, prior to the enactment of Louisiana Comparative Fault Law,[8] the case is governed by prior law, and virile share principles apply. See Cole v. Celotex Corp., 599 So.2d at 1072-74.
| iaOn appeal, the Watts suggest that because the jury was not asked to determine whether Dow bore any fault, Hebert Brothers waived entitlement to a reduction for Dow’s virile share. But neither the Watts nor Hebert Brothers requested that Dow’s fault be presented to the jury. Thus, both Hebert Brothers and the Watts waived their rights to have the jury resolve the issue. See La. C.C.P. art. 1812A (if the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue). Some issues may be tried by a jury while others in the same trial may be decided by the judge. See Champagne v. American Southern Ins. Co., 295 So.2d 437 (La.1974). Under the particular facts of this case, we find no error in the resolution of Dow’s liability by the trial judge.
A plaintiffs release of a joint tortfeasor reduces the amount recoverable against the remaining tortfeasors by the amount of the virile share (pro rata share) of the one released. Raley v. Carter, 412 So.2d 1045, 1046 (La.1982). Nonetheless, the remaining tortfeasor is only entitled to a reduction of the award if the parties released are proven to be joint tortfeasors. Thus, a prtrial settlement shifts the burden of proving liability on the part of the released tortfeasors from the plaintiff to the remaining defendant or defendants. Raley, 412 So.2d at 1047.
At the commencement of trial, the Watts read into the record the names of thirteen defendants, including Dow, who had settled with them. Because the respective liability of the settling defendants was not established on the record, the judgment cannot be reduced to reflect their respective pro rata shares. But we have found no manifest error in the trial court’s determination that Dow was at fault in causing Alfred’s injuries. Since the record reflects Dow’s fault, the trial court erred in failing to attribute one-half the damages to Dow and reduce the total damages awarded to the Watts against Hebert Brothers by one-half. Accordingly, 11Rwe amend the judgment to award to the Watts one-half their total damages, reflecting Hebert Brothers’ virile share.
QUANTUM
In its final challenge of the trial court’s judgment, Hebert Brothers maintains that the general damages award for Alfred’s lung cancer is beyond what a rea *64 sonable trier of fact could assess and suggests the amount should be reduced. Thus, without challenging the awards made by the jury for Alfred’s laryngeal cancer, Hebert Brothers urges that jury’s award of $2,750,000.00 (consisting of $750,000.00 for physical pain and suffering, $1,000,000.00 for mental anguish, and $1,000,000.00 for loss of enjoyment of life) for the lung cancer from which Alfred died was excessive. In its appellate brief, Hebert Brothers provides us with a series of reported cases that it contends are most similar to the Watts’ and asserts that $2,000,000.00 is the maximum amount the jury could have awarded without abusing its discretion.
The trial court’s determination of the amount of an award of damages is a finding of fact. The Civil Code provides that “[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.” La. C.C. art. 2324.1. Under the manifest error standard, in order to reverse a trial court’s determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. On review, an appellate court must be cautious not to re-weigh the evidence or to substitute its own factual findings just because it would have decided the case differently. Moreover, the initial inquiry must always be directed at whether the trier court’s award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact’s great discretion. It is only after articulated analysis of 114the facts discloses an abuse of discretion that the award may on appellate review, for articulated reason, be considered excessive. Only after such determination of abuse has been reached is a resort to prior awards appropriate for purposes of then determining what would be an appropriate award for the present case. However, absent an initial determination the trial court’s very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier’s award. Rando v. Anco Insulations Inc., 2008-1163 (La.5/22/09), 16 So.3d 1065, 1093-94.
Our review of the record shows no abuse of the jury’s vast discretion. Alfred was 69 years old when he was diagnosed with lung cancer in July 2001. Although he had suffered from laryngeal cancer and could no longer speak after the removal of his voice box, Alfred recovered fairly well from the surgery and regained his animated personality. To communicate, he wrote things down, read lips, used hand gestures, and clapped. Once he was diagnosed with lung cancer, Alfred was in denial. He could no longer walk, stand, eat, or do anything for himself. Alfred’s grown daughters had to put diapers on him and feed him with a syringe. Someone had to turn* him over every two hours. To see his doctor, he could no longer stay upright in a wheelchair, so he had to be transported by ambulance.
According to Dr. Edwards, Alfred’s treating physician beginning in 2000, when he met Alfred, he was a bright-eyed person who communicated with others through clapping. He described, “[W]hen you would say something and [Alfred] agreed with it, he clapped ... as though he was excited.” Dr. Edwards explained to the jury that during Alfred’s last three weeks of life, he stopped engaging in life. He went from an excited person to one who was nonresponsive to his environment.
*65 Gwen, Alfred’s second oldest daughter, testified that her father was a proud man who never asked anyone for anything. She explained that her father became | lsso depressed as a result of his condition that on his birthday in September 2001, he refused to take pictures with his children or grandchildren because he knew he would not be around much longer. When his family convinced him to take a picture, Alfred was confused and did not understand what was going on around him. In his final days, according to Gwen, Alfred was like a baby with no life in his body.
Helen, Alfred’s youngest daughter, told the jury that she watched her father go from a man to a baby after the onset of the lung cancer. She recalled that her father, a man not apt to show his emotions, cried when the doctor told him he had lung cancer. Describing her father as “a very proud man,” Helen told the jury of the indignity Alfred felt as he watched his own child put diapers on him, bathe him, and feed him through a tube. Helen stated that “his whole manhood was taken away from him” and that he could not do a thing about it. Helen testified that she could see the pain in his eyes and that, in the last three weeks of his life, his pain was constant and severe. Her testimony about Alfred’s final days was in conformity to that of Gwen. Helen reminded the jury that without a voice box, Alfred could not speak. He had communicated his feelings to his family through hugs and claps. Once he became too weak, he lost his only means of communication and so was unable to fully express his feelings in his final days.
Although the duration of his suffering from lung cancer was but a short period, it is clear from the record that the evidence proved Alfred suffered intense and severe changes in his life after the lung cancer diagnosis. Those members of his family who testified at trial established that Alfred was an old-fashioned man who took pride in being with and providing for his family. Alfred said little but demonstrated much. When he lost his ability to speak, he did not quit communicating, adapting a nonverbal articulation that those who interacted with him readily understood. But with the lung cancer, Alfred watched in constant | inphysical and emotional pain as all his means of communication vanished and life left him. In light of the testimony of his family and treating physician, we cannot say this jury abused its vast discretion in awarding the Watts the amounts of $750,000.00 for Alfred’s physical pain and suffering, $1,000,000.00 for mental anguish, and $1,000,000.00 for loss of enjoyment of life.
DECREE
For these reasons, the trial court’s judgment is amended to reduce to one-half, i.e., Hebert Brothers’ virile share, the amounts of damages awarded to the Watts. In all other respects, the judgment is affirmed. Appeal costs are assessed to Hebert Brothers Engineering, Inc.
AMENDED AND, AS AMENDED, AFFIRMED.
McDONALD, J. dissents and will assign reasons.

. Although this corporate entity has had several predecessors, Hebert Brothers Engineers, Inc. is the undisputed proper party defendant.

. The lawsuit was instituted by Alfred and his wife Rosa Lee. After Alfred's death, the trial court signed an order substituting as party plaintiffs Rosa Lee, in her capacity as Alfred’s surviving spouse, as well as Helen Mallion, Gwen Burnstein, Joyce Watts, and Alfreda Watts, who are Alfred's surviving children.

. At the hearing held as a result of this court’s remand order, the parties argued over whether the matter was before the trial court as a directed verdict or an exception of prescription. The distinction arose because if the trial court treated the issue of whether the Watts’ claims were timely asserted as an exception of prescription, additional evidence was admissible under La. C.C.P. art. 931. Although the Watts’ additional evidence was admitted by the trial court in an abundance of caution, that evidence is not contained in our record. *59 On appeal, the Watts maintain that the evidence admitted at the trial on the merits established the timeliness of their claims. Thus, on review, it is unnecessary to classify the procedural basis for consideration of the timeliness of the Watts’ claims, and we preter-mit such a discussion.

.In issuing its ruling on remand, the trial court stated that "as fact finder ... [it] finds substantial evidence of Dow's ... [solidary] liability.” Hebert Brothers maintains the trial court applied the wrong standard of proof to find that the Watts had proven Dow's soli-dary liability and suggests that this constituted legal error that interdicted the fact finding process. Proof by a preponderance of the evidence means that taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Connelly v. Connelly, 94-0527 (La. App.lst Cir. 10/7/94), 644 So.2d 789, 798. It is axiomatic that proof by substantial evidence is necessarily a heightened standard. While we agree with Hebert Brothers' suggestion that the applicable standard of proof in this case is preponderance of the evidence, we question whether the trial court actually applied a heightened burden of proof. Even so, any such error did .not and could not have prejudiced Hebert Brothers. Thus, this assertion is without merit.

. We note, moreover, that the record also supports a finding of Dow’s liability based on negligence. Because there is an almost universal duty to use reasonable care to avoid injury to another, see Rondo v. Anco Insulations Inc., 2008-1163 (La.5/22/09), 16 So.3d 1065, 1086-94, Dow's custodial liability falls within the ambit of such a broad duty and this record contains evidence to support findings that Alfred experienced significant exposure to asbestos, he received an injury substantially caused by that exposure, Dow’s failure to use reasonable care to avoid injury was a cause-in-fact, i.e., a substantial factor in generating Alfred's harm, and the risk that he would develop laryngeal and lung cancers was one within the scope of Dow’s duty.

. We find no merit in Hebert Brothers’ contention that the Watts failed to sufficiently plead a solidary relationship between it and. Dow since Dow was no longer a defendant at the time the Watts filed the supplemental petition that added Hebert Brothers; the supple *63 mental allegations did not include any averred liability on Dow’s part; and, therefore, the Watts' "blanket allegations” of the solidary relationship of all the defendants could not have included Dow. Un-objected to evidence of issues not contained in the pleadings that is admitted at trial serves to enlarge the pleadings. Such evidence is "treated in all respects as if [it] had been raised by the pleading[s].” Hopkins v. American Cyanamia Co., 95-1088 (La. 1/16/96), 666 So.2d 615, 623-24 (citing La. C.C.P. art. 1154). Because the record contains evidence that supports a solidary relationship between Hebert Brothers and Dow, which was admitted without objection, we find no merit in this contention.

. See La. Acts 1979, No. 431.