| 721 ST. CHARLES, LLC | * | NO. 2024-CA-0603 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| GIBBS RESIDENTIAL, LLC | * | |
| AND COMMERCIAL REALTY | | FOURTH CIRCUIT |
| DEVELOPERS, LLC | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-08628, DIVISION "F-14"
Honorable Jennifer M. Medley
* * * * * *
**Chief Judge Roland L. Belsome**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Rachael D. Johnson)

Patrick J. Lorio
H. Minor Pipes, III
PIPES MILES BECKMAN, L.L.C.
1100 Poydras Street
Suite 3300
New Orleans, LA 70163

    COUNSEL FOR PLAINTIFF/APPELLEE

Nicole Montagnet Montjoy
ATTORNEY AT LAW
23489 Arcadia Farm Road
Pass Christian, MS 39571

Fernand L. Laudumiey, IV
CHAFFE MCCALL, LLP
1100 Poydras Street
Suite 2300
New Orleans, LA 70163

    COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART**
**MAY 8, 2025**

This is an appeal of the district court's ruling that awarded damages and attorney's fees to the plaintiff for a breach of contract. For the reasons below, we affirm the trial court's decision in part, amend in part and reverse in part.

### FACTUAL SUMMARY AND PROCEDURAL HISTORY

At issue is a contract dispute between the owner of 721 St. Charles Ave.[1] ("721") and two companies, Gibbs Residential, LLC ("Gibbs") and Commercial Real Estate Developers, LLC ("CRD"). On February 18, 2018, Gibbs signed a standard form contract that exclusively leased 721 ("The Gibbs Lease") to serve as a staging ground for the construction[2] of a condominium building on the adjacent 731 St. Charles Ave. Steve Montagnet is a principle owner of 731 St. Charles Ave. LLC ("731").

The standard form Lease was confected by 721. The Lease contained a damages and repairs provision, ("Clause 13") that stated:

> **13. REPAIR AND MAINTENANCE.** Tenant shall, at its expense, repair all damage caused by Tenant's employees and invitees, maintain striping, and perform routine custodial services to keep the surfaces within the Premises (if any) in a clean condition. All other

---

[1] 721 St. Charles Avenue is owned by 721 St. Charles Ave. LLC. We will refer to both as 721. 731 St. Charles Avenue is owned by 731 St. Charles Ave. LLC. We will refer to both as 731.
[2] Gibbs served as the general contractor of the 731 construction project.

1

> maintenance, repair and/or replacement of or on the
> Premises shall be promptly and diligently performed by
> Tenant at Tenant's expense, so that the Premises shall be
> in good condition and repair at all times and in compliance
> with the Americans with Disabilities Act of 1990. Tenant
> shall specifically maintain the parking surface of the
> Leased Premises and return it to the Landlord in the
> condition received at the commencement of the Lease.

Gibbs failed to complete the construction project in a timely manner preventing a third-party parking company, S and P Parking ("SP"), from taking possession of 721.[3] Gibbs was discharged from the 731-construction project and ceased use of 721 on or around December 1, 2019.

The owner of 731, Steve Montagnet, arranged for his company CRD to take over the Gibbs Lease in order to prevent project delays. CRD entered into a Lease with 721 on December 1, 2019, which was extended through June 30, 2020 ("CRD Lease"). The CRD Lease was almost identical to the Lease signed by Gibbs, with the exception of a hand-written provision inserted under Clause 13, added by the owners of 721 and agreed to by CRD. The distinction bound CRD to be responsible for any damages caused by their possession of 721 *and* to repair damages caused by Gibbs' possession. The addition to Clause 13 stated: "This shall apply to Gibbs Residential LLC & damage applicable to [its] use up until 12/19 and throughout previous use of lot and drive."

Damages caused during Gibbs' possession included a removal of an electrical pole that fed power to light fixtures, damaged and destroyed brick pavers, removal of underground wiring and removal of electrical boxes. There was extensive damage to the lot's asphalt surface and striping paint[4]. Gibbs did not make, nor was it asked, to make any repairs on the lot after termination from the 731 job or the cessation of its possession of 721.

---

[3] SP signed a Lease to operate the 721-lot starting on July 1, 2019; ending on June 30, 2024. Due to Gibbs' delays, the start of the Lease was delayed until July 1, 2020. As the date approached SP noticed that cars were still on the lot, electrical poles and light fixtures were without power, hanging wire hazards, damages to asphalt and brick pavers. SP terminated the Lease per its terms.

[4] There is also testimony that bollards were moved from their location on the lot.

At the end of its 721 possession, CRD performed patch work repairs on the asphalt surface and restriped parking lines. CRD did not address any of the aforementioned damages caused by Gibbs. An owner of 721, Craig Boes ("Boes") repined that the work done by CRD was inadequate to return the lot to pre-Gibbs condition and hired an outside company to repair the damages at the expense of $106,077.89. Repairs included complete asphalt resurfacing.

On October 9, 2020, 721 filed suit for breach of contract naming Gibbs and CRD as joint defendants. It avers that 721 was not returned to proper condition and sought repair damages, lost profits from the SP Lease, attorney's fees, and post judgment interest. Gibbs settled claims with 721 prior to the one-day bench trial held on February 20, 2024, releasing it from all claims without prejudice. The trial court concluded that CRD was liable for damages caused during the duration of the Leases. The court awarded all of 721's repair costs, ($106,077.87). At a later hearing on May 15, 2024, the court awarded attorney's fees ($51,770.71) and judicial interest to 721; CRD appealed.

In its appeal, CRD assigns three errors from the trial court's ruling: that the trial court erroneously interpreted the CRD Lease and expanded the intent of the parties, that the trial court erroneously found that CRD and Gibbs were not solidary obligors and that damages should be reduced by the amount of Gibbs' virile share, that the Lease signed by CRD erroneously concluded that CRD's failure to restore 721 to pre-Lease condition constituted a "default" and entitled 721 to an award of attorney's fees and costs.

## STANDARD OF REVIEW

"Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination

3

of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is whether the trial court was legally correct or legally incorrect." *Bodenheimer v. Carrollton Pest Control & Termite Co.*, 17-0595, p. 8 (La. App. 4 Cir. 2/14/18), 317 So. 3d 351, 357 (quoting *New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey,* 09-1433, p. 9 (La. App. 4 Cir. 5/26/10), 40 So. 3d 394, 401))

## *ANALYSIS:*

## *BREACH OF CLAUSE 13:*

CRD alleges that Clause 13 of the CRD Lease was expanded by the court to include improvements to 721, rather than repairs. From a review of the trial transcript, both 721's and CRD's understanding of the Lease was clear, even though their interpretation differed. Boes contended that:

> When Gibbs was kicked off the job. Mr. Montagnet's company took over the [L]ease, as part of that [they] agreed that they would repair any damage and perform any maintenance that wasn't performed either during their [L]ease or Gibbs'.

Boes believed that the asphalt patch work job done by CRD was not sufficient to return the lot back to its intended use. In his testimony, Boes explained in detail that the repairs 721 made were necessary to return the lot to pre-Gibbs form, to comply with the Americans with Disabilities Act of 1990. Further, that asphalt work done by CRD was "quilt patched, scarred and dented" and not a consistent finish that was present before Gibbs took possession. As a result, its surface was conducive to water retention. Boes contended that other physical elements that were removed from the lot: electrical pay boxes, lighting, light poles, and wiring should have been addressed.

CRD contended that it satisfied the contractual obligation to return the leased premises in the condition received at the commencement of the Gibbs Lease.

4

At trial, Mr. Montagnet stated his interpretation of what the obligation meant:

> Q. [Attorney for 721]: "So what did you understand that this handwritten language obligated CRD to do with respect to the damage during the Gibbs [L]ease?"
> A. Steve Montagnet: "My understanding was that CRD, to the point of which Gibbs construction did not …. Repair" [the lot] "while [it was] in charge and had their [L]ease with Mr. Boes, that we would do it. That is CRD would do it"[5].

Mr. Montagnet, testified that he knew there would be "some repair necessary" caused by Gibbs. In his opinion, CRD's obligation was upheld and that the finished work was actually "a little bit better" than the pre-Gibbs condition. Further, Mr. Montagnet testified that the asphalt resurfacing done by 721 was a capital improvement and beyond CRD's scope of obligation. Mr. Montagnet stated that other elements of Gibbs' damage including electrical conduits and light fixtures were not addressed by CRD because they were "Gibbs' responsibility." Further, the brick paver damages were the City of New Orleans' responsibility. He asserted that the repairs he made to asphalt were adequate and in line with other parking lots he owned.

The trial court disagreed with Mr. Montagnet's assessment and found that 721's repairs following CRD's possession were necessary. "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong." *Davis v. Nola Home Constr., L.L.C.,* 16-1274, p. 7 (La. App. 4 Cir. 6/14/17), 222 So. 3d 833, 840. We find no manifest error in the trial court's determination.

### SOLIDARY OBLIGATION

CRD also argues that the trial court erred in failing to find that both CRD and Gibbs were solidary obligors as it related to the duration of the Gibbs Lease.

---

[5] Pre and post execution of the CRD/721 Lease obligation, the notion of being responsible for the Gibbs damage was continually brought to the attention of CRD by 721.

As a result, that CRD is owed a virile share credit for Gibbs' solidary liability.

"An obligation is solidary for the obligors when each obligor is liable for the whole performance." La. C.C. art. 1794. "Solidarity of obligation shall not be presumed [and] a solidary obligation arises from a clear expression of the parties' intent or from the law." La. C.C. art. 1796. "Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of an agreement or judgment to the contrary." La. C.C. art. 1804.

In the instant case, CRD and Gibbs had no express intent to be indivisibly obligated to each other for damages that resulted from their possessions of 721. Neither defendant presented a precise calculation of specific damages caused by each other. In her deposition, Lauren Gibbs stated that "[i]t would be very hard to differentiate between what Gibbs Residential did and what some alleged other party may have done in trying to parse who is responsible for what."[6]

The Gibbs Lease and the CRD Lease were different instruments. Gibbs was not made aware of any new terms other than an "understanding" that the obligation of 721's upkeep had shifted from Gibbs' responsibility to CRD. Gibbs never returned to the site, nor were they asked to return. The parties never met to formally discuss damages and the transition from Gibbs' possession to CRD's was facilitated by 721.

"The coextensive obligations for the 'same thing' create the solidarity of the obligations. When it is not clear that the parties are all obliged to the same thing… then an obligation *in solido* is not presumed and must be expressly stipulated.[7] However, when it is entirely clear that the parties are all obliged to the same

---

[6] Lauren Gibbs is the owner of Gibbs Construction (which includes Gibbs Residential).
[7] La. C.C. art. 2093 [now La. C.C. art. 1796].

thing… then there is an obligation *in solido* by definition, as a matter of law." *Berlier v. A.P. Green Indus., Inc.*, 01-1530, p. 9 (La. 4/3/02), 815 So. 2d 39, 45.

In *Berlier*, the Louisiana Supreme Court found that four asbestos-related defendants were solidarily obligated to a settlement, even though two of the defendants had legally released themselves from the case. The Supreme Court held that one performance contemplated by the defendants bound all defendants to the same act. The case at hand demonstrates that even as separate agreements, only one object of performance was contemplated on the part of the defendants. Stated differently, when CRD replaced Gibbs, CRD and Gibbs were both obligated by separate obligations to repair the same damages to 721 that occurred from February 18, 2018, to December 1, 2019.

Gibbs and CRD are also indivisibly bound by the same obligation. "An obligation is indivisible when the object of performance, because of its nature... is not susceptible to division." La. C.C art. 1815. "An indivisible obligation with more than one obligor is subject to the rules governing solidary obligations." La. C.C. art. 1818. "When distinct obligors owe the same indivisible performance to one obligee, they are solidarily bound to that obligee, regardless of their intentions." *Id.*, Comment B.

"If the parties in the present case had intended for the obligation to be divisible, then one would reasonably suspect that they would have determined each pro-rata portion, and each defendant would be bound for a sum certain." *Berlier,* 01-1530, p. 14, 815 So. 2d at 48. The defendants never made such a determination, nor was there any communication between them regarding damages. Pursuant to La. C.C. art. 1818, the rules of solidary obligation apply for the Gibbs term. In the absence of an agreement to the contrary, the default rules for virile shares, as outlined in La. C.C. art. 1804 are applied and each defendant owes a proportional amount of damages.

"When negligence of two persons combines to produce the injury of a third, the parties at fault are joint tort-feasors, and are liable *in solido*, to the injured plaintiff." *Walker v. Anco Insulations, Inc.*, 22-0763, p. 10 (La. App. 4 Cir. 5/3/23), 382 So. 3d 243, 253, *as amended on reh'g* (May 30, 2023).[8] "A non-party found liable at trial may be assigned a virile share." *Id*. A plaintiff may also settle and release a joint tort-feasor reducing his claim against the other obligors in proportion to the debt owed by a released obligor. *Id*. This is known as a virile share credit.

In their brief, 721 asserts that if CRD wants a virile share reduction of the costs, then it had the burden of proving that Gibbs was liable by offering evidence of their purported liability at trial. *Walker* notes that "when a defendant urges the fault of a non-party, it is incumbent on the defendant to provide evidence which preponderates that fault actually exists on the part of the non-party." *Id*. In addition*,* "a pre-trial settlement shifts the burden of proving liability on the part of the released tortfeasors from the plaintiff to the remaining defendant or defendants." *Watts v. Georgia-Pac. Corp.*, 12-0620, p. 12 (La. App. 1 Cir. 9/16/13), 135 So. 3d 53, 63.

CRD calculated Gibbs' responsibility for much of the damage on the record at trial. While this was not a precise, pro rata calculation, CRD presented copious amounts of evidence that Gibbs caused damages and left things different from the way they found them.[9] There was no dispute in the record that Gibbs removed physical components that were situated on the lot. Gibbs never made any repairs, and it was known by CRD that Gibbs was responsible for these issues. *Watts* bolsters the point that in the absence of specific, proof of pro-rata damages entered into the record by each defendant, a virile share allotment is appropriate.

---

[8] This tort case uses the terms "tort-feasor contribution" and "virile share liability" interchangeably.

[9] In *Watts*, the court noted that the evidence produced on record included Dow as a settling defendant. Since the record reflects Dow's fault, this was sufficient to show that Dow was at fault. *Watts*, 12-0620, p. 12 (La. App. 1 Cir. 9/16/13), 135 So. 3d 53, 63.

We conclude that Gibbs and CRD are solidarily liable for the obligations required during the duration of the Gibbs Lease. There is nothing in the record to pin point what damages were caused by CRD during the seven-month post-Gibbs Lease possession. We reduce the damage award by Gibbs' virile share.[10]

### *ATTORNEY'S FEES*

Finally, we discuss if the award of attorney's fees for a breach of Clause 13 was an error. CRD asserts that the trial court erred by concluding that its failure to return the parking lot to pre-Gibbs condition constituted a default. Specifically, CRD claims that the contract does not automatically include a recovery in attorney's fees for a breach in Clause 13, and that attorney's fees are awarded only in limited instances occurring in the event of a default.

"The law of contracts in Louisiana is very specific: [a]greements legally entered into have the effect of laws on those who have formed them. In following this language, we have declared that parties are free to make their own contracts, and however unusual, drastic, or unreasonable features may be therein, they should be enforced so long as they do not contravene good morals or public policy." *Evangeline Par. Sch. Bd. v. Energy Contracting Servs., Inc.*, 617 So. 2d (La. App. 3rd Cir.1993) 1259, 1263.

Both Leases contained a default and termination provision ("Clause 18") and a remedies provision that gave the lessor options in the event of a default by the lessee ("Clause 19"). These provisions state (in pertinent part):

> **18. DEFAULT AND TERMINATION.** If Tenant fails to make payment of any rent when due, and if such failure shall continue for a period of seven (7) calendar days after written notice thereon from Landlord is received by Tenant, the Landlord shall have the right to terminate this Lease. If, during the Term, Tenant twice fails to make payment of any rent when due, and Landlord sends written notice thereof to Tenant, then if Tenant either (i) fails to make payment of any rent when due for a third time during

---

[10] We also note that the record presented to us, had sufficient consideration of the issue of solidary liability for trial court consideration.

such twelve (12) month consecutive period, or (ii) breaches any of the covenants, terms and conditions of this Lease during such twelve (12) month consecutive period, then Landlord shall have the right to terminate this Lease without further notice to Tenant.

**19. REMEDIES.** Upon the occurrence of any Default, Landlord shall be entitled to exercise all, or any of the following remedies: (a) to immediately terminate this Lease, and to sue for and collect past due rent plus attorney's fees and court costs, (b) to take possession of the Premises and to sue for and recover all rents, **and other payments**, then accrued or thereafter accrued, plus any attorney's fees and court costs, (c) to accelerate all rent due under this Lease and to sue for and recover any and all past rent and future rent due under this Lease, plus any attorney's fees and court costs, or (d) any remedy otherwise authorized under any Applicable Law.

Clause 19 grants the lessee the right of remedy in the event that the acts of the lessor result in a default. In short summary, remedies available include four options: (a) termination; (b) eviction; (c) acceleration of the rent due; (d) anything that is authorized by law. Subsections 19 (a), (b) and (c) note that attorney's fees can be collected. 721 contends that subsection (b) under Clause 19 permits the award of attorney's fees to expand to a breach in Clause 13. Specifically, they assert that "other payments" within the meaning of Clause 19 includes payment for repairs and maintenance.

"As a general rule, attorney fees are not due and owing a successful litigant unless specifically provided for by contract or by statute." *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So. 2d (La. 1984), 1014, 1015. To determine the extent that Clause 19's language "other payments" applies to any other types of breaches in the Lease, we must look at Clause 18 which specifically addresses instances of default and termination.

Every instance of the included language of Clause 18 is specific to rent payments, thus the instances in which a default can be applied to remedies are limited. Clause 18 makes no mention of a default due to damages, repairs or

maintenance as contemplated in Clause 13. 721 could have drafted Clause 18 to also include damages, maintenance and repairs. Moreover, Clause 13 could have imposed attorney's fees upon a breach of its terms. Clause 13 could have also referred to Clause 19's inclusion of "other payments" to trigger its available remedies. The attorney for 721 who furnished this contract failed to include any of this language.[11] Even if the remedies under Clause 19's "other payments" did extend to Clause 13, they are still limited to the instances of default outlined in Clause 18, which did not occur. Contrary to 721's argument, the term "other payments" does not automatically grant a remedy for any breach outlined in the contract. Attorney's fees are not specifically provided for a breach in Clause 13.

In their reliance on *Rogers v. Restructure Petroleum Mktg. Servs.* 721 argues that if the word "default is not otherwise defined in a commercial lease, it means failure to perform an obligation to do*." Id*., 01-1396. P. 5 (La. App. 3 Cir. 3/6/02). If this is the case then a default would apply to Clause 13's obligations.

Even if we were to assume that default was not expressly defined in this Lease, which we do not, the law requires us to construe any unclear provisions against the drafter of the contract. *"*In the case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text… A contract executed in a standard form of one party must be interpreted, in case of doubt in favor of the other party." La. C.C. art. 2056. Therefore, we find that the award of attorney's fees for breach of Clause 13 was in error.

### CONCLUSION

Based on the foregoing reasons, we affirm in part; amend in part; and reverse in part. We affirm the finding that CRD is liable to 721 for a breach in

---

[11] Clause 5 outlines penalties and late fees for failure to pay or past due rent. This Clause points to remedies outlined in Clause 19 in the event of a default. This coupled with Clause 18 make it hard for any other conclusion to be drawn other than the drafter of this contract contemplated a default to be limited to instances of lost or late rent.

contract and amend the judgment to reduce and credit the damages owed by 50%. We also reverse the awarding of attorney's fees to 721 and remand to the district court for further proceedings in line with this opinion.

**AFFIRMED IN PART; AMENDED IN PART; REVERSED IN PART**